IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 18-93 |
| TIMOTHY SMITH | |

## MEMORANDUM OPINION

Pending before the Court is a motion to suppress a pistol found on Defendant Timothy Smith after a traffic stop and arrest. Smith contends that the pistol was found in violation of his Fourth Amendment rights and should therefore be excluded from trial. For the reasons explained below, Smith's motion will be denied.

### I. FACTS[1]

In November 2017, Officer Perry Thornton was investigating an individual named Risheem Campbell for a shooting in Philadelphia. Officer Thornton received an anonymous tip that Campbell was in Center City, around 1500 John F. Kennedy Boulevard. While there, Officer Thornton saw two men on bikes – one of whom he thought was Campbell – ride off after he tried to approach them. After the two men fled, Officer Thornton relayed flash information over police radio describing Campbell as follows: "black male, gray hoodie, blue mountain bike." Officer Thornton added that Campbell had a "black bubble jacket" and "full beard"; may be armed; and frequented the area of 22nd and Point Breeze. Police dispatch then told "units on the air [to] be advised be on the lookout for a black male, full beard, black bubble jacket with a gray hoodie underneath" who "possibly frequents the area of 22nd and Point Breeze wanted in reference to a shooting. . . ."

---

[1] The Court finds the following facts based on the credible testimony provided by Officers Perry Thornton, Christopher Ngo, and David Anzideo and other admitted evidence during the pretrial motions hearing.

Officer Christopher Ngo heard dispatch's flash information and drove to Point Breeze. Officer Ngo saw an individual, whom he thought was Campbell, riding a dark-colored bicycle in the wrong direction on a one-way street. That individual was, in fact, Smith. Smith contends that, at the time, he didn't match the flash description. Instead, he "had a full beard and was wearing a charcoal gray parka with fur trim on the hood, black and white t-shirt, and charcoal gray camouflage cargo pants." In any event, because of the traffic infraction, Officer Ngo drove next to Smith and asked him to stop. Smith declined and proceeded to bike. In response, Officer Ngo broadcast his encounter with Smith over police radio and reported that Smith was heading down 22nd Street.

Less than a minute after Officer Ngo announced this information, Officers David Anzideo and John Martorell were in a marked vehicle and saw Smith on 22nd Street. Officers Anzideo and Martorell positioned their car to intercept Smith. The police car and Smith's bike then collided.[2] Smith ran on foot, but Officer Martorell chased and tackled Smith. Initially, Smith resisted arrest by kicking and was able to escape. Officer Martorell tackled Smith again. Officer Ngo witnessed this physical struggle; he testified that he saw Smith flailing his arms and reaching for the right side of his jacket. Officer Ngo believed that Smith was retrieving a weapon. In response, Officer Martorell began punching Smith and eventually subdued him.

Smith was arrested, and Officer Anzideo found a Luger pistol on him. Smith was then charged with possession of a firearm by a convicted felon. 18 U.S.C. § 922(g)(1). Smith now challenges both the initial traffic stop and the search incident to his arrest, arguing that the pistol was found as a result of an unconstitutional search and seizure.

---

[2] The parties dispute who struck whom during the collision. As explained later, the discrepancy in their narrative accounts is not material to the Fourth Amendment analysis.

## II. DISCUSSION

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. const. amend. IV. "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). Although the Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans*, 514 U.S. 1, 10 (1995), Supreme Court cases "establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). The exclusionary rule "reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804 (1984). The question here is whether Smith's pistol should be suppressed by dint of the exclusionary rule. The answer requires analyzing two issues: (1) whether the initial traffic stop was supported by reasonable suspicion; and (2) whether the later arrest of Smith was supported by probable cause.

### a. Traffic Stop

The temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The traffic stop "is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id*. at 810. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. And the Government has the burden of showing and presenting evidence that the traffic stop was reasonable. *United States v. Clark*, --- F.3d ---, 2018 WL 4131763, at *3 (3d Cir. 2018).

The Government has met its burden, showing that Officer Ngo had probable cause to believe Smith was riding his bike in the wrong direction. According to Officer Ngo, he first saw Smith riding the wrong way on a one-way street, in violation of 75 Pa. C.S. § 3308(b), and then asked Smith to stop. Smith did not. "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). Indeed, "any technical violation of a traffic code legitimizes a stop, ***even if the stop is merely pretext for an investigation of some other crime***." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (emphasis added) (citing *Whren*, 517 U.S. 806). Therefore, Officer Ngo's stop – even if based on the ulterior motive of finding a suspected shooter – was reasonable under the Fourth Amendment. *See Whren*, 517 U.S. at 813 (holding that the constitutional reasonableness of a traffic stop does not turn on the "actual motivations of the individual officers involved").

### b. Search Incident to Arrest

The remaining question, then, is whether Smith's subsequent search was constitutionally permissible. *See United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010) ("The stop and the search are independent actions, and each requires its own justification."). Although searches "conducted outside the judicial process . . . are *per se* unreasonable under the Fourth Amendment," a search incident to a lawful arrest is a "specifically established and well-delineated" exception. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotation marks omitted). An arrest is lawful if "sustained by probable cause."[3] *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). "Probable cause exists where the facts and circumstances within the

---

[3] Although Smith claims that the "stop and frisk" rubric from *Terry v. Ohio*, 392 U.S. 1 (1968) applies, there is no indication of a "brief, investigatory stop." *Wardlow*, 528 U.S. at 123. Rather, the Government must show probable cause existed for the search, which demands a higher standard than that of the "stop and frisk" fact pattern. *See United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998) (noting that a *Terry* stop may be justified by less than probable cause necessary for an arrest).

arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id*.

There was probable cause to support Smith's arrest. Officer Anzideo first heard the police dispatch's warning to be "on the lookout for a black male, full beard, black bubble jacket, with a gray hoodie underneath" who was "possibly on a blue mountain bike" in the 22nd and Point Breeze area. Moments afterwards, while Officer Anzideo was in the Point Breeze area, he heard Officer Ngo's broadcast of a man "heading south on Point Breeze on a blue bike going on 22nd Street right now." Officer Anzideo then saw Smith riding on 22nd against the flow of traffic in violation of applicable traffic regulations. And as both Officer Anzideo and Officer Ngo testified, 22nd and Point Breeze is a high-crime area known for its frequent narcotics sales and shootings. At that point, then, Officers Anzideo and Martorell sought to stop a person who violated a traffic regulation and attempted to evade Officer Ngo in a dangerous area.

Further, Smith, for the most part, matched the description of Campbell as reported in the flash about a shooting suspect: he was a black male with a full beard riding a dark-colored bicycle near 22nd and Point Breeze. *See United States v. Moore*, 459 F.2d 1360, 1362 (D.C. Cir. 1972) ("Thus the fact that circumstances only partially matched the broadcast description of defendant does not negate the validity of the arrest; the totality of the information upon which the officers acted at the time of the arrest is the test of whether or not there was probable cause.").

Smith also tried to escape officers after he was spotted riding against the flow of traffic and was tackled by Officer Martorell twice. Both Officers Ngo and Anzideo testified about Smith's resistance to arrest and his attempt to retrieve a possible weapon from his jacket during the struggle. Given these facts, Smith's arrest was supported by probable cause. As the Third Circuit has noted, "It is 'well established that where police officers reasonably suspect that an

5

individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest.'" *See United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007) (quoting *United States v. Sharpe*, 470 U.S. 675, 705 (1985) (Brennan, J., dissenting)).

Smith's discussion of *United States v. Brown* does not compel a different result. 448 F.3d 239 (3d Cir. 2006). There, the Third Circuit held that the police lacked reasonable suspicion – a standard less stringent than probable cause – in seizing the defendant, Kareem Brown. *Id*. at 252. The Third Circuit premised its conclusion, in part, on the generalized description of the suspects as black males "between 15 and 20 years of age, wearing dark, hooded sweatshirts and running south on 22nd Street, where one male was 5'8'' and the other was 6'." *Id*. at 247. "To make matters worse, the match of Brown . . . to even this most general of descriptions was hardly close" because Brown was 28 years old, and had a full beard while the description made no mention of any facial hair. *Id*. at 248. *Brown* is thus distinguishable because the flash here provided specific details of the suspected shooter and Smith substantially matched these details, including his full beard, spatial location, and use of a dark-colored bicycle. *Cf. id.* (noting that description was "wildly wide of target."). Therefore, Smith's arrest was lawful, and Officer Anzideo's search incident to that lawful arrest was permissible under the Fourth Amendment.

Insofar as the parties dispute who struck whom during the collision, any discrepancy is immaterial to the analysis here. Smith contends that police officers used their vehicle to strike him as he was riding down 22nd Street. The Government, on the other hand, asserts that Smith ran his bike into the police vehicle. As a general matter, the characterization is legally

6

significant under the Fourth Amendment because it determines when, if any, seizure occurred. *See Brown*, 448 F.3d at 245 (holding that a seizure occurs when there is a "laying on hands or application of physical force to restrain movement, even when it is ultimately unsuccessful") (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). If the police officers intentionally struck Smith and then found the pistol, Smith's flight after the collision would be immaterial. *Id*. By contrast, if the Government's account is correct, Smith's escape attempt after the collision can be included in the Fourth Amendment calculus. *Id*.

But the inconsistency between the parties' accounts is beside the point: the evidence shows that, after violating a traffic regulation, Smith did not heed Officer Ngo's initial request to stop. Thus, even if police officers seized Smith by striking him with their vehicle, Smith's initial flight from Officer Ngo after the traffic stop, in addition to the other facts listed above, already furnished the police officers with probable cause to arrest. *See Sibron v. New York*, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.").

An order follows.

**BY THE COURT:**

**/s/ Wendy Beetlestone**

_____

Date: September 4, 2018                 **WENDY BEETLESTONE, J.**